We have three cases on the argument calendar this morning, two from the PTO that are being consolidated and argued together, although I see counsel is still splitting them up, even though the briefs are substantially the same, but it's your argument. And third case from a district court. So the first two cases argued together are Bozeman Financial v. Federal Reserve Bank, case 2019-1018 and 1020, Mr. Maurer. Good morning, Your Honors. Since you referenced splitting up argument, just for clarification, Your Honor, I will Scott Gant for Bozeman Financial. I will be arguing the issues concerning the Supreme Court's decision in return mail and its implications for this case and the issues addressed in the supplemental briefing. My colleague, Mr. Maurer, will be addressing the decision by the PTAP. So you're Mr. Gant, sorry. I am, Your Honor. Good. Thank you. In return mail, the Supreme Court concluded that Congress did not intend the Federal Government to be included in its definition of person authorized under the AIA to initiate a proceeding before the PTAP. The question before this Court is whether Congress meant for the Federal Reserve Banks to be able to obtain PTAP review when the Federal Government, including the other components of the Federal Reserve System, may not do so. The Federal Reserve Banks claim that they are persons because they are distinct from the sovereign. They say that in pages one and two of their supplemental brief, and they also said so in page six of their motion opposing. You didn't raise this issue before the Board. You didn't raise this issue in the Blue Brief. Why isn't it raised? It is not waived, Your Honor. We addressed that in our briefing, but I want to be directly responsive to your question. Some of this will reiterate what's in our briefing. That usually happens, Your Honor.  At least four reasons why it's not waived, Your Honor. First is, unlike a typical case of waiver, the very first thing that Bozeman did after filing a notice of appeal in this Court was ask to stay briefing pending a resolution by the Supreme Court of return mail. At that point, the Supreme Court had already granted certiorari. It was apparent that there was a likelihood that the decision in that case would impact this case, and we asked to stay briefing. The Federal Reserve Banks opposed, and that motion was denied. But unlike a typical case of waiver, where there's surprise and prejudice here, there was neither. Wait, why didn't you raise it in your Blue Brief, then? We could have, Your Honor. I have to be candid. That could have been done. Wait, so there's really less excuse to relieve you of your forfeiture in this case because it's clear you were aware of the issue before you filed your Blue Brief. You asked for the stay for this very reason. So you can't claim, so I put them on notice. In fact, that enters to your detriment, as far as I can tell, because you were clearly aware of the issue and then made a litigation choice not to raise it in your Blue Brief. I certainly understand that perspective, Your Honor. Respectfully, we have a different one. I think there were two reasons, as a practical matter, why that was not done. The first is just a matter of dollars and cents, to be quite honest. Bozeman Financial is a single inventor. He has extremely limited resources. There were constraints on his ability to pay his counsel to brief the issues in this case. Briefing an issue like that is not insignificant, obviously. We would want to give the court the benefit of the best briefing possible. Not insignificant? You could have cut and pasted the briefing that already existed in all these other cases into yours. That could have cost your client minutes of your time. You could have done at least that simply to preserve the issue or raise the issue or put the other side on notice following the Blue Brief that this was an issue. I just don't buy that argument. Yes, you could have charged your client to recreate the wheel, but the wheel already existed and was already written out. You could have cut and pasted it. I don't think I'm going to be able to move you from your position on that issue. Let me, if I may, just answer some of the other reasons why we think there was no waiver here. The second, return mail also was instructive on this point. As the court is aware, in return mail in this court, no party ever raised the issue or the definition of person. That was done by the panel sua sponte after full briefing and after oral argument. Two members of the panel found that there had been a waiver, and Judge Newman found that there had not been a waiver and articulated the reason why the definition of person was important. When the issue went up to the Supreme Court, the Solicitor General made the Supreme Court aware of the waiver point, that this court had found waiver. The Supreme Court nonetheless decided to proceed and address the merits. We think that that is instructive here that you should not find a waiver when, unlike I understand your position, Judge Moore, that we should have raised the issue, but we think we're in a better position than the parties were in return mail where they never even raised it themselves. I mean, but that's a situation in which the Supreme Court can excuse the waiver and go ahead and decide it, but we don't have to excuse your waiver here, right? It's discretionary with the court. I think that I'm not willing to concede that, Your Honor, but with respect, I don't want to argue about that if you'll permit me. You're not willing to concede that waiver is discretionary? No, no. Well, I'm not willing to concede that it would not be an abuse of discretion for the court to find waiver here. And if I may, I'll refer the court to a decision by the Supreme Court in 1993, which I think is instructive on this point. It's 508 U.S. When the Supreme Court chose to address the return mail issue at the Supreme Court, were there wholesome briefs that fully evaluated that issue when they chose to do so? There was only the petition stage briefs, not the merits briefing on the issue. But both sides had briefed the issue. Obviously, in cert petitions, there is usually a preview of the merits, but I would not say it was full merits briefing. But that didn't happen here because you didn't raise this in your blue brief. Well, we didn't raise it in our opening briefs, but we asked the court for permission to provide supplemental briefing, and that was granted. So this court has the benefit of full briefing from both sides on what I'll call the return mail issue. Do you have any other reasons there's no waiver? Well, the Supreme Court decision that I was referencing, U.S. National Bank of Oregon 508 U.S. 439 from 1993, where the Supreme Court said that the Court of Appeals had properly considered an issue not raised in the briefs or at oral argument and only in post-argument supplemental briefing. We think that's here. And then the other reason, which is compelling, and we do address this in our brief, Your Honor, was the change in the law doctrine. We think we fit squarely within this. The Supreme Court in return mail affected a material change in the law with respect to the definition of person under the AIA. That's exactly the issue we have in front of us here. Okay. So that exhausts your waiver arguments, right? It does, Your Honor. Okay. So on the merits, it seems as though there's some significant differences between the Federal Reserve Bank and the post office. First of all, the stock of the Federal Reserve Banks is owned by commercial banks. Second of all, those banks are not funded by the government. Third, their board of directors, the majority of the board of directors, six out of nine are elected by the commercial banks. None of those things is true in the post office context. So why isn't the Federal Reserve Bank's situation different from the post office situation? I think we agree with the Federal Reserve Banks about what the test should be here. They said in their brief. No, but to just address the differences that I identified. No federal funding, commercial banks elect the majority of the board, commercial banks own the stock. There may be other differences. Why are those differences not sufficient to distinguish this from the post office? Sure. Let's start with the funding issue, Your Honor. The mere fact that the Federal Reserve Banks get their funding from a source other than appropriations cannot be dispositive. The Federal Reserve Banks, the appellees here, acknowledge in page one of their brief that the Federal Reserve Board is an agency of the federal government. The Federal Reserve Board also is effectively self-funded. In fact, it is the source of the funds for the Federal Reserve. The Federal Reserve Board is not the party here. They're not. But the point, Your Honor, is that the mere fact that funding comes from a source other than congressional appropriations isn't dispositive, nor is it relevant. But it is. And that's why I wanted to get to the test here. Because what I think we agree on is the test is whether the Federal Reserve Banks are distinct from the sovereign. And they're clearly not. And I think going to the criteria that you raise, Your Honor, I think are relevant and need to be considered. But when you look at the totality of the circumstances, you look at the statutory structure of the Federal Reserve Banks, and you look at the practical realities. The statutory structure, the authorizing statute doesn't identify them as being an agency of the federal government, right? It doesn't. One thing that it importantly does. Unlike the post office. It doesn't. That's not dispositive. We have a footnote in our brief that says that there are other parts of the U.S. Code where Congress has said that the Federal Reserve Banks are agencies. We cited that in our brief in a footnote. Also importantly, the section 12 U.S.C. 341 says that the Federal Reserve Bank waives sovereign immunity. It says that the banks can sue and be sued. The Supreme Court has repeatedly recognized that language as a waiver of sovereign immunity. I have never come across a situation in which the government waives sovereign immunity if the entity is not sovereign. Also, if you look at the way the statute is structured, for example, of course all the money, the excess profits, go to the treasury. If the Federal Reserve Banks were litigating against Bozeman, the money that they would be spending there would go to the people of the United States. The Federal Reserve Banks are the operating arm of a unified Federal Reserve System. The board, which is a federal agency, supervises and directs that system. It must approve the presidents and vice presidents of the Federal Reserve Banks. That's 12 U.S.C. 341. It can suspend or remove any Federal Reserve Bank or officer at 12 U.S.C. 248F. It exercises general supervision over the banks, 12 U.S.C. 248J. And if you look importantly at what happened during the most consequential work that's been done by the banks during their modern history was during the financial crisis. We discussed this in our briefs. The Federal Reserve Banks came to this court and filed an amicus brief in the Starr case and told this court that there was no private rescue available to bail out AIG. The only recourse was bailout by the government. That was done by the Federal Reserve Banks. I see my red light is on. I'm happy to answer as many questions as you have. You indeed have consumed your time, but we'll give you a couple of minutes for rebuttal. Let's hear from Mr. Maurer on the merits. Good morning. I plan to address two issues this morning. First, the Board's erroneous Alice Step 2 analysis, and in particular in light of the BASCOM case. And second, the waiver issue for the 640 patent. But aren't these claims simply directed to collecting, analyzing, presenting data? The claims also include another key feature, which is the universal access feature referred to in the briefs. The universal access feature is a distinguishing feature over the prior art. And what it is is it permits all of the relevant players in the financial transaction to access the database at all points along the financial transaction. And this is a key point here. The Board never addressed whether that portion of the claim is a conventional or non-conventional feature, and there was actually no evidence submitted to the Board on that issue. And so our point would be that under BASCOM, therefore, the case needs to be reversed. And let me explain under BASCOM why I reached that conclusion. What is the statutory language or the claim language, I'm sorry, that you think makes this not an abstract idea? You said the universal access? Sure. I don't see those words in the claim, so what are you talking about? So if you look at the 840 patent, Claim 1, at Column 28, Lines 47 through 48, there's the concept that in the database, the database is going to be accessible by each party to the payment clearing process. At Column 28, Lines 67 through Column 29, Line 2, it mentions again that any party to the payment clearing process is capable of verifying the parameters at each point along the financial transaction payment clearing process. And the patent describes how this innovation, in contrast with the prior art, which was a closed system, allows for more accurate fraud detection. I don't believe the board or any of the parties dispute that the patent at least purports that to be an improvement over the prior art. And there was no analysis as to whether that purported improvement over the prior art was a conventional or a non-conventional feature by the board. And there was no evidence submitted that it was conventional in the industry, in this payment clearing, in the financial industry, that this was a conventional feature. In the Solutrain case, when it was up here before it was decided, you said this is like Solutrain. Now, in Solutrain, we held that it was an abstract idea, and it didn't pass Step 2 of the Alice test either. So what are we to conclude? If this is just like Solutrain, you lose, right? Well, for purposes of the physical process argument that was being made in the brief, it was similar to the Solutrain claims. But for this particular feature, claims in Solutrain didn't include anything like this feature. In fact, the claims were merely a regurgitation, a restatement of the concept that the court found to be the abstract concept. Here, the board did not find or rule on whether this concept of configuring the database to allow access to multiple parties was part of the abstract concept. The court's abstract, or rather the board's abstract concept in this case, was narrower and didn't include this feature. And so therefore, what the board needed to do was to look at whether this additional feature added anything to the claims, whether it was conventional or unconventional. I'm confused. You seem to be morphing Step 1 and Step 2 in your answer. I understand your data accessibility point to be a Step 2 of the Alice argument, not a Step 1. I don't see why having the database acceptable to multiple parties changes whether or not it's an abstract idea of collecting, displaying, and analyzing information to reconcile check information against the ledger. We certainly are focusing on Step 2 with respect to this point. This is an improvement over the prior argument. That's fine. I just wanted to make sure that I wasn't misunderstanding your argument. I understood that to be a Step 2 argument. And I apologize, but sometimes the court's cases, in my opinion, at times, look to whether the claims are directed to an improvement over the prior one, do the Step 1 as well. But for all purposes of this oral argument, I was focusing on Step 2, certainly. And I do see my time is up. But if you have any other questions. Can I ask one question? Yes, certainly. I want to ask a question about waiver in general. But on page 41 of your blue brief, which would refer to the 640 patent, you explain that you're asking us to overturn the patent, the PTAP's final decision that claims 1 through 26 of the 640 patent are invalid. Or, alternatively, you want me to send it back to have claims 1 through 26 reconsidered in light of the eligibility guidelines. There's a real problem with that request, given that most of those claims were separately invalidated under Section 112, which you did not appeal. And so I feel, at a minimum, that your, whether it's sloppiness or overbreath or what, but I feel like your request is not something, not belief that this court would ever be capable of giving you. Is that right? The brief could have been stated better in that regard. The focus should be for the 640 on claims 21 through 24 and whether those are invalid. So now you are not asking this court to render or overturn an invalid decision on anything except 21 through 24, correct? With respect to the, correct, with respect to the Section 101 issue. Well, no, with respect to any issue. Correct. You didn't appeal the other. Correct. Thank you, Counsel. Mr. Buckholz. Good morning, Your Honors. May it please the Court, Jeffrey Buckholz for the Federal Reserve Banks. I'll respond to Mr. Gant's argument on the return mail issue. And if it pleases the Court, my colleague, Mr. Mitchell, will respond to Mr. Maurer's argument. I'd like to start with preservation since that's where the Court started on return mail. There's multiple layers of forfeiture here. I'll start with the opening brief. The most basic rule in a court of appeals is you can't raise an issue that you don't raise in your opening brief. And, Judge Maurer, as you point out here, there's not the excuse that you sometimes have where maybe you could say you didn't know about the issue, and that's why you didn't raise it in your opening brief. They obviously knew about it. They moved for a stay. Based on return mail, that was denied. That denial didn't prevent them from raising the issue. But there was a motion for supplemental briefing in this case. And what did that motion request? The motion requested the Court to grant supplemental briefing. On the merits of the return mail issue, correct? Well, I mean, I don't think the motion... Was it limited to on whether or not you waived the issue, for example? No, certainly their motion was not focused on their waiver. Or the Court's granting of it. Did the Court, I guess, here's the thing. Did we grant them permission to supplementally brief an issue that should have been found waived? And if so, should that be taken into account? Because waiver is discretionary in deciding whether we ought to have deemed this waived. So the motions panel order granting leave for supplemental briefing does not address waiver one way or the other. It does not say we're granting supplemental briefing because we find there's no waiver. Did you oppose the request for supplemental briefing? Yes, we did oppose it, including on grounds of waiver. But my point is simply in answer to your question, the order... And the Court didn't obviously give you that relief. The order granted supplemental briefing, limited to 10 pages. Despite your waiver argument. Correct. But that single-judge order granting supplemental briefing without explanation, I don't think, binds the merits panel. No, it doesn't bind. Nothing binds. This is discretionary. We have the discretion. And so the question is, shouldn't that be factored into account in assessing whether or not we ought to deem it waived in this case? While it may not have been raised in the blue brief, this isn't one of those instances where it came up only in the reply and you didn't have a chance to address it. You did address it. You were aware of it. And the Court expressly allowed this briefing. Does that lean towards maybe, therefore, we shouldn't find it waived since the Court did choose to allow this briefing? As Your Honor points out, the waiver is discretionary and the Court can reach the issue if it wants. We don't think that the order simply granting leave for supplemental briefing should tie this Court's hands at this stage. This Court now should exercise... Nobody suggested it should tie hands. I don't think he even suggested it should tie hands. But what I'm suggesting is it's a relevant factor. So unlike your typical case where you have something not raised in the opening brief, here there was a request for supplemental briefing, which was granted. Whether I would have granted it or not is not the relevant question, but it was granted. And then both sides had an opportunity to vet the issue at that point. And the grant was over your waiver argument. So it's not whether it's binding on us. It's whether it doesn't sort of weigh heavily in favor of us finding that this issue ought not to be treated as waived. That's fine, Your Honor. I don't want to fight the Court about this. It's fine with me if the Court decides in its discretion to overlook the waiver and go ahead and decide the issue. The last thing I just do want to say in response to Your Honor's question is the order granting supplemental briefing allowed only 10 pages per side. And so Your Honor asked my friend on the other side, isn't this different from return mail where the Supreme Court had full briefing in front of it? And 10 pages per side, the Court can decide in its discretion whether the issue has been fully vetted so that the Court is prepared to decide and overlook the waiver or whether. Because, of course, if the issue had been raised in their opening brief. I'm sorry. Are you suggesting that you didn't feel like you were given adequate opportunity to address the issue? And if so, did you make any motion to that extent after the request? No, Your Honor. Or are you making one orally here? We weren't given adequate time. No, Your Honor. I'm not suggesting that at all. I'm simply saying that as the Court decides how to exercise its discretion about whether to overlook the waiver, if the Court feels like the issue has been adequately briefed, that would tend to counsel in favor of overlooking the waiver. How many cases are there like this? How big a problem is this question of whether the Federal Reserve is a person within the meaning of the AIA? There aren't many cases like this. How many? Well, I think these two cases below are the only cases that I know of where a Federal Reserve Bank has petitioned for post-issuance review. There are other cases where the Federal Reserve Banks have been sued in district court for patent infringement. And one issue, if I could move to the merits, is in addition to the distinctions, Judge Dyke, that you pointed out between the Postal Service and the Federal Reserve Banks, a very important distinction is the one the Supreme Court emphasized in the return mail. The Supreme Court said it's reasonable for Congress to treat the Postal Service and other federal agencies differently from everyone else for AIA purposes because they already enjoy the advantage of limited remedies and only claims court patent infringement suits. The Federal Reserve Banks are subject to suit for patent infringement in district court like everyone else, subject to the full range of remedies, and don't have those special protections that the government has. And so that's an important point in the return mail opinion and an additional clear distinction here. So what I would say, to get back to your Honor's question about how important the issue is, the Federal Reserve Banks would be happy for the court to resolve this issue and rule that they are persons entitled to petition for post-issuance review. That hasn't come up that often. Only in this case is the only case I know of where a Reserve Bank has petitioned for post-issuance review. But since the Reserve Banks do get sued for patent infringement in district court like any other kind of defendant, it is important to the Reserve Banks to have the option of post-issuance petitioning available to it in a way that's very different from the Postal Service. The other thing I'd like to say about the merits is that I think my friend said that he thinks that we agree on the test. The test is whether the Reserve Banks are distinct from the sovereign. I'm happy for the court to apply that test. I think that the first place the court should look on how to apply that test is the Supreme Court's decision in Banchak, which we cite in our briefs, the Cuba Central Bank case, where the Supreme Court says that sovereigns frequently create, governments frequently create, entities that are instrumentalities of the sovereign but are juridically distinct from the sovereign for good reasons, and that courts normally should respect the juridical separateness of those instrumentalities from the sovereign. So here, as a matter of law, the Reserve Banks have been created, Judge Dyke, as you pointed out, by Congress, by statute, in ways that make them distinct from the sovereign. The Supreme Court says normally you respect that, and I can't think of a good reason here why you wouldn't respect that when normally the Supreme Court says you're supposed to. Again, because why would Congress want the Reserve Banks to be subject to district court patent suit, the full range of remedies, along with every other private defendant, unlike the Postal Service, and not have the benefit of post-issuance petitioning? Has it been established that the Postal Service is entitled to protections of whatever it is, 1498, so that patent infringement suits with respect to the Post Office can only be brought in the court of federal claims? Correct, Your Honor. The Supreme Court emphasizes that and says the government, and there was no dispute about the Postal Service being part of the government. There's a statute that makes it part of the executive branch. So the Supreme Court emphasizes that the government— You didn't address whether the Postal Service was subject to 1498, right? No, it did, Your Honor. The Supreme Court's opinion says that suits against the Postal Service for patent infringement are limited under 1498 to being in the claims court, no injunctions, no punitive damages, et cetera. The Supreme Court actually emphasizes that as a reason why it was reasonable for Congress to not allow the Postal Service to petition for post-issuance review. The Postal Service, in a sense, doesn't need the benefit of AIA petitioning because it already has these unique defenses under 1498. And like the Postal Service, you're not a government corporation. The U.S. has no stock in you. You don't receive congressionally appropriated funding, right? Correct. All that's true. So we're juridically separate from the sovereign. Now I understand why you're, quote, fine with us reaching the merits. Well, it avoids you having to argue this another time, possibly. Correct, and we do think the answer on the merits is clear, and it would be to the bank's advantage to have the court settle the issue now if the court settles it in our favor, of course. Oh, I see. I see. So you're all for waiver if we're going to go against you. But if we're with you, you're perfectly willing to waive waiver. Like any lawyer in my position would be. I'm guilty as charged of that. But back to the merits just for one moment before my time runs out. There was – excuse me one second. Yeah, the one thing I wanted to point out is my friend quoted to the court something that the Federal Reserve Bank of New York had said to this court in an amicus brief in Star as if that was some kind of gotcha. But that brief goes on to say three pages later than the quote that my friend read you is, the Federal Reserve Bank of New York is not a part of the United States government. It is a federal instrumentality, a corporation entrusted by statute with important federal functions in all actions relevant to Star. In that case, the bank was closely allied with but legally separate from the United States. Well, exactly. Legally allied – excuse me, closely allied with but legally separate from. And the actions at issue here, this is a claim – this is a dispute about whether the banks are infringing Bozeman patents relating to check clearing, providing financial services, running a payment system. That conduct, the Federal Reserve Banks engage in directly under their own authority provided by Congress. Yes, they're subject in some areas of the bank's conduct to more direct supervision by the Board of Governors. In the conduct at issue here, the banks are acting on their own pursuant to direct grants of authority from Congress. They are legally separate from the sovereign. The court should hold that they are persons if the court chooses to reach that issue. If your honors have no further questions, I'll turn it over to Mr. Mitchell on the merits. Thank you very much. Thank you, Counsel. Mr. Mitchell. Good morning. May it please the Court. I'm Josh Mitchell for the Federal Reserve Banks. I'll just very briefly be addressing the 101 merits. My friend suggested that the universal access feature was not addressed by the Board. That's actually incorrect. On Appendix 42 of the 840 Appendix, the patent owner contends that the 840 patent is directed to a unique system that uses disparate databases accessible from multiple data entry points. And then on the next page, it notes that this court has repeatedly held that such indications of computers and networks that are not even arguably inventive are insufficient to pass the test at Step 2. On the 640 waiver point, as you noted, Judge Moore, the only argument for claims – the only claims that survive are Claims 21 through 24, and the only argument they're eligible is that they're eligible for the same reasons as the 840 patent. And even if you consider the 640 claims, 21 through 24, those claims plainly fail on the merits because they're broad enough to claim a mental process. Unless the Court has any questions, we will rest on our briefs. Thank you. Thank you, Counsel. Mr. Dent, two minutes for rebuttal. Let me direct the Court to decisions from the First, Sixth, and Tenth Circuit, which are in opposition to my friend's position. They address – the Tenth and the Sixth Circuits squarely address the question of whether, under a Sherman Act antitrust statute, the Federal Reserve Banks were persons, even though they were corporations. Both courts said that they are not persons. They are sufficiently linked to the government that they should not be deemed persons. That followed on the U.S. Supreme Court decision from 1941, U.S. v. Cooper, which had laid the foundation saying that the government is not a person. I don't find these decisions that relate to other statutes such as the Tort Claims Act or the antitrust laws to necessarily be that helpful here. There's a different purpose in the AIA, and it could be that Federal Reserve Banks are not a person under the AIA or a person under the AIA and have a different result under the statute. I understand. I think it's instructive, but Your Honor may disagree upon reviewing the cases. I will refer the Court also to a decision from this Court after we filed our brief but was cited in my friend's brief, American Bankers Association v. United States. That decision did concern the Federal Reserve, and there were several instructive points there going to your question about the stock. This Court observed in that case that the Federal Reserve stock is part of a regulatory regime and that the Federal Reserve Banks are guardians of, quote, public welfare. I also observed that what my friends are urging is that they should be able to go to the PTAB, even though it is clear that the Federal Reserve Board, which directs and supervises them, cannot. We think that's not supported by any Supreme Court decision. By what Congress did in the AIA, it would produce the kind of odd results that the Supreme Court eschews, see Reiter v. Cooper 507 U.S. 258. Can the Federal Reserve Bank be sued for patent infringement? We believe so. If they can be sued for infringement, why shouldn't they be able to challenge the patent? Well, the Supreme Court addressed that in return mail, and that goes to a point that my friend brought up where I just want to observe that we disagree with the notion that the Federal Reserve Banks can necessarily be sued in district court. We think the better view actually is under 1498A that there is at least a colorable, if not a better view, that you need to go to the Court of Federal Claims to do so. Also, my friend was mistaken in his response to a question about whether there have been any other PTAB review requests by the Federal Reserve Banks. There have been. We found at least one Federal Reserve Bank, the Stambler IPR 2013. There were several numbers, but 00341 and several other related matters. So we know that it has happened before. And to the point about how big a problem this is, if you accept my friend's view, what would happen is there are all kinds of entities throughout that are created by Congress which have attributes of What was the result of the 2013 case? That settled, Your Honor. Settled. So it was dismissed voluntarily by the parties through consent. Would you finish up, please? Yes. One final point, and I appreciate your generosity with the time. Going to Judge Dyke's question about how big a problem this is, I think it's more than just the Federal Reserve Banks. There are all kinds of entities created by Congress that have different attributes, some of which look like private and some of which look like government. And if you decide here that the Federal Reserve Banks are a person under the AIA, you're going to have to do the same exact thing with respect to all other kinds of entities that are subject to patent infringement suits. Thank you, Your Honor. Thank you, counsel. The case is both submitted.